IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TIMOTHY AARON BAXTER,                     )
                                          )
        Petitioner,                       )
                                          )
v.                                        )          No. 1:13-cv-01306-JDB-egb
                                          )
RUSTY WASHBURN,                           )
                                          )
        Respondent.                       )

---

ORDER ADDRESSING MOTIONS,
DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

---

In November 2013, Petitioner, Timothy Aaron Baxter, a Tennessee state prisoner, filed a

*pro se* habeas corpus petition under 28 U.S.C. § 2254 (the "Petition"). (Docket Entry ("D.E.") 1.)

He subsequently filed numerous motions, four of which remain pending and are now before the

Court for disposition. (D.E. 78, 81, 83, 84.) For the reasons that follow, the motions and the

Petition are DENIED.

BACKGROUND

I.      State Proceedings

        The following background summary is drawn from the state court record (D.E. 13, 33) and

the decisions in Petitioner's state appeals, *see Baxter v. State*, No. W2013-02427-CCA-R3-PC,

2014 WL 6680666 (Tenn. Crim. App. Nov. 26, 2014); *State v. Baxter*, No. W2012-00361-CCA-

R3-CD, 2013 WL 1197867 (Tenn. Crim. App. Mar. 25, 2013), *appeal denied* (Tenn. June 13,

2013); *Baxter v. State*, No. W2012-01393-CCA-R3-CO, 2013 WL 597787 (Tenn. Crim. App. Feb. 15, 2013).

In May 2011, a grand jury in Madison County, Tennessee, returned an indictment charging Baxter with aggravated assault causing serious bodily injury. (D.E. 13-1.) Prior to the September 2011 jury trial, the court granted a defense motion to exclude the medical records of the seventy-three-year-old victim of the assault, Richard Upright. *See Baxter*, 2014 WL 6680666, at *5-6.

At trial, Upright testified that, in December 2010, he and his friend, Mary Thomas, were traveling in his automobile near Jackson, Tennessee, when he observed an individual, whom he later learned was Baxter, driving erratically and passing other vehicles on the shoulder of the road. The victim pulled into a gas station to allow Thomas to dial 9-1-1. *Id.* Baxter "pulled in behind them" and "stated 'I don't care if you are an old man. I'll hit you anyway.'" *Baxter*, 2013 WL 1197867, at *1. After Upright "walked around [the defendant's] car to record the vehicle's license number," Baxter "'shoved' him to the ground" and "fled the scene." *Id.*

The victim recalled that "when he fell, he could not get up" and described the pain in his shoulder and hip as "killing pain." *Id.* at *2. He drove himself to his doctor's office but left without being treated because the physician was unavailable. Upright returned the next day, and "[h]is doctor ordered x-rays and referred him to another physician, who referred him to the hospital." *Id.* At the hospital, Upright received a nerve block to reduce the pain. He explained that, as of the time of trial, he still experienced "unbearable" pain in his neck and shoulder, which caused him to quit his job as a truck driver. *Id.* On cross-examination, he "acknowledged that he

eventually stood up on his own after [the defendant] knocked him down" and "admitted that prior to this occasion, he was taking blood pressure medication." *Id.*

A sergeant with the Madison County Sheriff's Department testified that he investigated the incident, and "developed [Baxter] as a suspect." *Id.* James and Jean Bunny, who had been driving on the same highway as Upright and the defendant, corroborated many of the details of the victim's testimony, including the assault itself.

After the jury returned a guilty verdict, Petitioner was sentenced to twelve years of incarceration. The Tennessee Court of Criminal Appeals affirmed the conviction on direct appeal and denied rehearing. (D.E. 13-12.) The Tennessee Supreme Court denied permission to appeal (D.E. 13-14) and rehearing (D.E. 13-15).

On May 31, 2012, while his direct appeal was pending, the inmate filed a petition for writ of error coram nobis in the Madison County Circuit Court, alleging that he was denied counsel at his preliminary hearing and denied a hearing to determine his indigency. *See Baxter*, 2013 WL 597787, at *1. The trial court dismissed the petition and the Tennessee Court of Criminal Appeals affirmed.[1] *See id.* at *2.

Petitioner subsequently filed a *pro se* post-conviction petition in the state court (D.E. 33-1), which was amended by appointed counsel (D.E. 33-2). Baxter averred, among other things, that his trial attorneys were ineffective in filing a *motion in limine* to exclude the victim's medical records, which was granted by the criminal trial court. Following an evidentiary hearing, the post-

---

[1]The May 31, 2012, petition, which is relevant to Claim 4 of the instant federal habeas Petition, was his third such request. (*See* D.E. 13-16 at PageID 624.)

conviction trial court denied relief in a written decision.  (*Id.*)  The Tennessee Court of Criminal

Appeals affirmed.  *Baxter*, 2014 WL 6680666, at *11.  Petitioner thereafter filed two motions to

alter or amend (D.E. 33-7, 33-9), a motion for rehearing (D.E. 11), and an application for

extraordinary appeal (D.E. 33-13).  The motions and application were denied.  (D.E. 33-8, 33-10,

33-12, 33-14.)  Baxter filed an application for extraordinary appeal with the Tennessee Supreme

Court (D.E. 33-15), which was also denied (D.E. 33-16).  In addition, the state supreme court

denied permission to appeal.  (*Id.*)

The inmate then moved to reopen his post-conviction proceeding.  *Baxter v. State*, No.

W2015-00474-CCA-R3-PC (Tenn. Crim. App. Oct. 9, 2015).[2]  The lower court denied the motion

and the Tennessee Court of Criminal Appeals dismissed the appeal.  *See id.*

II.     Federal Habeas Proceedings

The Petition sets forth the following challenges to the aggravated assault conviction:

Claim 1:  "Insufficient evidence." (D.E. 1 at PageID 5.)

Claim 2:  "Unreasonable application to Petitioner of statute [Tennessee Code
Annotated] § 39-11-106(a)(34)(C) procedural unfairness."  (*Id.* at PageID 6.)

Claim 3:  "Whether the appellate court erred in it[]s opinion on the insufficiency of
the evidence when citing the mandate from the [state] supreme court on the legal
standard of proof necessary to satisfy all elements of the statute [Tennessee Code
Annotated] § 39-11-106(a)(34)(C)."  (*Id.* at PageID 7.)

Claim 4:  "Denial of counsel at the preliminary hearing and the denial of an
indigency hearing all in violation of the Sixth Amendment right to counsel at the

---

[2]Respondent, Rusty Washburn, did not include with the state court record the Tennessee
Court of Criminal Appeals' decision dismissing Petitioner's appeal from the denial of his motion
to reopen.    That decision is available on the Tennessee Appellate Court's website,
https://www.tncourts.gov.

4

critical stages of prosecution."[3]  (*Id.* at PageID 7-8.)

Respondent filed an answer (D.E. 12) and the state court record (D.E. 13, 33), and Petitioner submitted a reply (D.E. 18).  On November 25, 2015, the undersigned stayed this matter pending Baxter's filing of a statement "disclos[ing] the status of any remaining collateral challenges to his . . . conviction."  (D.E. 27 at PageID 1001.)  He twice failed to fully comply with the Court's directive and was given two more opportunities to file the required statement. (D.E. 34, 43.)  On September 19, 2016, the inmate's newly-retained counsel filed a 180-page "Supplemental Brief" in support of the Petition (D.E. 42), which the Court found was oversized and failed to provide the required statement (D.E. 43).  The Court struck the brief and gave Baxter one more chance to submit the statement.  (*Id.*)  He was cautioned that failure to comply with the order would result in dismissal of his case pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.  Petitioner neither filed the statement nor responded in any way to the Court's order.  The Court therefore dismissed the Petition for want of prosecution and for Baxter's repeated failures to comply with the Court's orders.  (D.E. 44.)  Judgment was entered on January 27, 2017.  (D.E. 45.)

Proceeding *pro se*, the inmate filed a motion for relief from the judgment pursuant to Fed. R. Civ. P. 60 (D.E. 46) and a motion for withdrawal of counsel (D.E. 46-3).  The Court granted the latter request and took the Rule 60 motion under advisement pending Petitioner's filing of the required statement.  (D.E. 51.)  After the statement was filed (D.E. 52), the Court

---

[3]For ease in readability, quotations from Petitioner's pleadings and other documents have been corrected for irregular capitalization.

vacated the judgment and order of dismissal, and granted Baxter twenty-eight days in which to

file an amended petition if he so desired (D.E. 53).  No amended petition was submitted.[4]

LEGAL STANDARDS

I.    Habeas Review and Procedural Default

The statutory authority for federal courts to issue habeas corpus relief to persons in state

custody is provided by § 2254, as amended by the Antiterrorism and Effective Death Penalty Act

("AEDPA").  *See* 28 U.S.C. § 2254.  Under the statute, relief is to be granted only if the prisoner

is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was

"adjudicated on the merits" in the state courts.  28 U.S.C. § 2254(d).  In that circumstance, the

federal court may not grant relief unless the state-court decision "'was contrary to' federal law

then clearly established in the holdings of [the United States Supreme] Court; or that it 'involved

an unreasonable application of' such law; or that it 'was based on an unreasonable determination

of the facts' in light of the record before the state court."  *Harrington v. Richter*, 562 U.S. 86, 100

(2011) (quoting 28 U.S.C. § 2254(d)) (internal citations omitted).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite

to that reached by [the United States Supreme] Court on a question of law," or when "the state

court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent

---

[4]In compliance with the Court's directive (D.E. 53), Respondent filed a supplemental
answer on January 3, 2018, representing "that Petitioner's state-court collateral proceedings have
no impact on his original petition."  (D.E. 66 at PageID 1985.)

6

and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are rebutted by clear and convincing evidence and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted). A state court's credibility determinations are also entitled to a presumption of correctness. *Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2000).

Before a federal court will review the merits of a § 2254 claim, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in conjunction with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts.

*Id.* A petitioner procedurally defaults his claim when he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Miss.*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits of a claim that was procedurally defaulted. *Id.* at 750. The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013). A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

II.     Sufficiency of the Evidence

The United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (*Jackson* applies to sufficiency-of-

the-evidence claims on habeas review under § 2254(d)). In *Jackson*, the Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19.

This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.* at 319; *see also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.").

The AEDPA adds a layer of deference to *Jackson's* already deferential standard. By virtue of the statute's command that federal habeas relief may issue only if the state court's decision is "contrary to" controlling federal law or based on "an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254(d), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Johnson*, 566 U.S. at 656.

DISCUSSION

Respondent argues that Claim 4 is procedurally defaulted and that the remaining claims are without merit. In his reply, Petitioner insists that he has not procedurally defaulted Claim 4, reiterates his argument that the evidence was insufficient to support his conviction, and argues issues not raised in the Petition. He maintains in his pending motions that he is entitled to an

evidentiary hearing and a "limited" certificate of appealability ("COA") as to the Court's denial of his motion for release on bond, and that the Court erred in denying summary judgment on Claim 1.[5]

I.      Pending Motions

   A.  Motions for an Evidentiary Hearing and for a Limited COA

The inmate argues that an evidentiary hearing is needed on Claim 4 and on numerous other constitutional issues not raised in the Petition. By order dated May 30, 2018, the Court took the motion under advisement, stating that it would consider the merits of the motion upon review of Petitioner's claims under Rule 8(a) of the Rules Governing Habeas Corpus Cases Under § 2254 (the "Habeas Rules") and would direct an expansion of the record or an evidentiary hearing if warranted. (*See* D.E. 80.)

As will be discussed herein, Claim 4 is procedurally defaulted and Petitioner has not shown cause and prejudice to excuse the default. Because the claim is not properly before the Court, an evidentiary hearing to expand its factual basis would be futile. *See Vizcaino-Ramos v. Lindamood*, Case No. 1:14-cv-01230-STA-egb, 2017 WL 5163588, at *4-5 (W.D. Tenn. Nov. 7, 2017) (denying evidentiary hearing on procedurally defaulted claim); *see also Rios v. Shane Place*, No. 2:15-cv-160, 2017 WL 4271105, at *3 (W.D. Mich. Sept. 26, 2017) (denying evidentiary hearing

---

[5]Baxter seeks a "limited certificate of probable cause," (D.E. 83), which the Court construes as a motion for a limited COA. *See Gonzalez v. Thaler*, 565 U.S. 134, 142 n.3 (2012) (a certificate of probable cause is the "predecessor" to the COA mandated by 28 U.S.C. § 2253(c)(1)).

on ineffective-assistance-of-counsel claims "since the claims were procedurally defaulted and could not be considered on their merits").

With respect to the additional constitutional issues which Petitioner insists require an evidentiary hearing, those putative claims are not before the Court. Despite being granted several opportunities during the pendency of this case to do so, the inmate never properly filed an amended petition.[6] An evidentiary hearing on those issues is therefore not warranted.

Baxter requests that the Court issue a limited COA as to the denial of his sixth request to be released on bond pending the resolution of this action. (D.E. 83.) Even assuming the Court could issue a COA from the denial of release on bond, the motion must be denied as moot since

---

[6]Five months after briefing on the Petition was concluded, Baxter filed a motion for leave to amend the Petition (D.E. 20), accompanied by a 209-page proposed amended petition (D.E. 21). By order dated November 25, 2015, the Court ruled that the proposed amendment was not on the Court's official form and did not substantially follow the form's format, was "too long," and was replete with "irrelevant observations" that "confused the issues." (D.E. 27 at PageID 994-96.) Concluding that "[t]his mode of presentation [was] an unreasonable waste of judicial resources," the Court denied leave to file the proposed amended petition. (*Id.* at PageID 996.) The movant was nevertheless granted leave to file an amended petition on the official form.

On December 14, 2015, the inmate filed a second proposed amended petition (D.E. 29), as well as a "Supplemental Claim" (D.E. 29-2). The Court again denied leave to amend the Petition, noting that Baxter did not completely fill out the petition form, did not include factual bases for some of the claims, and impermissibly "cross-reference[d] . . . the original Petition and . . . the proposed First Amended Petition, which the Court previously declined to allow." (D.E. 34 at PageID 1642-43.) The Court advised Petitioner that he could file "a proper amendment after the stay has been lifted." (*Id.* at PageID 1643 (emphasis omitted).)

On August 16, 2017, the Court vacated the judgment and order of dismissal, and granted Petitioner twenty-eight days to file an amended petition if he so desired. (D.E. 53.) Thereafter, he moved for an extension of time to file the pleading. (D.E. 54.) The Court granted the motion and extended the filing deadline to October 16, 2017. (D.E. 55.) To date, no amended petition has been filed, and the time for doing so has long ago expired.

the present order resolves this case. The motions for an evidentiary hearing and for a limited COA are DENIED.

B. Motions to Alter or Amend

Baxter filed a document on June 11, 2018, titled "Motion to Alter or Amend," in which he asked the Court to reconsider its decision denying his motion for partial summary judgment. (D.E. 81.) On August 6, 2018, he submitted a document styled "Motion to Strike and Replace Prior Motion to Alter or Amend with Corrected Motion to Alter or Amend," attaching thereto a revised argument in support of his request for reconsideration. (D.E. 84, 84-1.) In light of the revision, the June 11, 2018, motion is DENIED as moot.

The revised motion is also DENIED. As the Court stated in its order denying the motion for partial summary judgment, proper resolution of the exhausted claim is by way of Habeas Rule 8(a), which authorizes the Court to review the Petition, the answer, the reply, and the state court record. *See* Habeas Rule 8(a) and advisory committee's note to 1976 adoption and 2004 amendments. The present order undertakes that review.

II.     Insufficient Evidence:  Claims 1 and 3

In these claims, Petitioner asserts that the evidence was insufficient to convict him of aggravated assault because "the State failed to present any legally sufficient medical proof that the victim suffered a serious bodily injury, or 'any' injury." (D.E. 1 at PageID 5.) He insists that the Tennessee Supreme Court held in *State v. Farmer*, 380 S.W.3d 96 (Tenn. 2012), "that the prosecution 'must,' and 'shall,' provide medical records [or] medical expert testimony" to establish that the assault caused "serious bodily injury" (D.E. 1-1 at PageID 13) and that the

12

Tennessee Court of Criminal Appeals "did not uphold [that] mandate" (D.E. 1 at PageID 7). Respondent argues that the claims are without merit.

"A person commits assault who . . . [i]ntentionally, knowingly or recklessly causes bodily injury to another." Tenn. Code Ann. § 39-13-101(a)(1). Aggravated assault is the "[i]ntentional[] or knowing[] commi[ssion of] an assault [which] . . . [r]esults in serious bodily injury to another." Tenn. Code Ann. § 39-13-102(a)(1)(A)(i). "'Bodily injury' is defined to include 'a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty.'" *Farmer*, 380 S.W.3d at 100 (quoting Tenn. Code Ann. § 39-11-106(a)(2)). "Serious bodily injury" "involves: (A) [a] substantial risk of death; (B) [p]rotracted unconsciousness; (C) [e]xtreme physical pain; (D) [p]rotracted or obvious disfigurement; [or] (E) [p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty[.]" *Id.* at 100-01 (quoting Tenn. Code Ann. § 39-11-106(a)(34)).

On direct appeal, Baxter argued that the evidence was insufficient to convict him of the "extreme physical pain" variant of "serious bodily injury." He challenged the state's proof on the ground that "[t]he only evidence presented to establish 'serious bodily injury' was [the victim's] testimony that he experienced extreme pain" and "no expert testimony or medical records [had been] introduced." (D.E. 13-8 at PageID 506.)

The Tennessee Court of Criminal Appeals rejected the assertion. *Baxter*, 2013 WL 1197867, at *3-4. In doing so, it first acknowledged that *Jackson*'s evidence-sufficiency standard governed its analysis. *Id.* at *3. Noting that the prosecution had elected to proceed on a theory of "extreme physical pain," the appellate court turned to the Tennessee Supreme Court's then-recent

decision in *Farmer*, in which the high court addressed the level of proof necessary to demonstrate "extreme physical pain":

> In *Farmer,* our supreme court held:
>
>> [I]n the instant case, the evidence does not support a finding that [the victim's] injury involved a degree of pain that would warrant its inclusion among the other enumerated portions of the definition of "serious bodily injury." Although [the victim] testified that he experienced pain after realizing he had been shot, hospital records do not classify his pain as "extreme" but rather as "mild" to "moderate." [The victim] was given a prescription for pain medication before leaving the hospital, but he never testified as to the degree of pain he experienced. A jury could not reasonably infer from [the victim's] testimony, the hospital records, and the nature of his injury that [his] wound involved extreme pain.

*Id.* at *4 (quoting *Farmer*, 380 S.W.3d at 101-02).

The Tennessee Court of Criminal Appeals distinguished the facts in *Farmer* from those in the case before it, noting that Baxter's victim "classified his pain as 'killing pain,' 'maximum,' 'more than [he could] handle,' and 'unbearable.'" *Id.* In addition, the court articulated that "[t]his is not a case in which the victim's description of the level of his pain is the only evidence of extreme physical pain." *Id.* According to Upright, "he required a nerve block while in the hospital to manage his pain, . . . he was hospitalized for four or five days, . . . he had to return to the hospital, and . . . he eventually had to quit his job as a truck driver because the pain was too severe for him to continue working." *Id.*

Finding that "[n]o evidence was presented to refute [the victim's] testimony," the court deferred to the jury's credibility determination and found the evidence sufficient to sustain the conviction, stating as follows:

The jury, as the trier of fact, accredited the victim's testimony. The jury obviously believed that the victim suffered an injury to his shoulder and neck. In this case, viewed in the light most favorable to the State, a jury could have reasonably inferred from the victim's testimony that he was injured and that he suffered extreme physical pain as a result of appellant's attack. Appellant is not entitled to relief on this claim.

*Id.*

The appellate court's decision easily survives review under the AEDPA's standards. First, because it correctly identified *Jackson*'s standard and applied it to the facts of Petitioner's case, its evidence-sufficiency determination is not contrary to clearly established Supreme Court law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

Furthermore, the Tennessee Court of Criminal Appeals' findings that Upright "suffered an injury to his shoulder and neck" and "that he suffered extreme physical pain" resulting from that injury, *Baxter*, 2013 WL 1197867, at *4, are supported by the record. The victim testified that Petitioner's assault caused him pain in his "shoulders . . . and . . . neck," as well as his hips. (D.E. 13-4 at PageID 362-63.) *See, e.g.*, *State v. Ibrahim*, No. M2015-01360-CCA-R3-CD, 2016 WL 4449571, at *6-7 (Tenn. Crim. App. Aug. 22, 2016) ("victim's testimony that she felt pain as a result of the defendant's actions was sufficient to establish a bodily injury" under Tennessee Code Annotated § 39-11-106(a)(2)), *appeal denied* (Tenn. Jan. 1, 2017). With respect to whether the pain was "extreme" so as to establish that the injury was "serious," Upright also testified that the pain was "maximum," "[m]ore than [he] [could] handle," and "severe." (D.E. 13-4 at PageID 358-60.) He recounted that he saw his doctor and was admitted to the hospital where he received a

nerve block "[t]o kill the pain." (*Id.* at PageID 361.) The victim also claimed that he quit his job as a truck driver "because the pain was unbearable." (*Id.* at PageID 362.) The jury implicitly credited Upright's testimony. Consistent with *Jackson*'s commands, the appellate court did not disturb that credibility decision. *See Jackson,* 443 U.S. at 319.

Baxter alleges that "medical records that were excluded from the trial" show that the victim suffered from "pre-existing injuries that were not caused by the Petitioner" and that on at least one trip to the hospital he "was admitted . . . for arrhythmias, unrelated to the incident." (D.E. 1-1 at PageID 15.) The Court construes these allegations as assertions that the appellate court's factual determinations were unreasonable because the victim was not credible in light of the medical records. The arguments must be rejected.

As mentioned previously herein, the defense successfully moved for exclusion of the victim's medical records at trial. *See Baxter*, 2014 WL 6680666, at *3. Because the evidence submitted to the jury did not include those records, this Court may not consider them in addressing Petitioner's evidence-sufficiency claim.[7] *See McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (per curiam) (on review of sufficiency of the evidence, federal courts must consider only the evidence presented to the jury, citing *Lockhart v. Nelson,* 488 U.S. 33, 41-42 (1988) ("[A] reviewing court

---

[7]Petitioner challenged the exclusion of the victim's medical records by way of his state post-conviction claim that his attorneys rendered ineffective assistance when they moved to keep the records from the jury. *See Baxter*, 2014 WL 6680666, at *3. At the post-conviction evidentiary hearing, trial counsel testified that he moved to exclude the materials because he wanted to "prevent[] the jury from hearing the medical proof of the victim's broken ribs, dislocated shoulder, and pain medication." *Id.* at *6. The post-conviction trial court denied the claim and the Tennessee Court of Criminal Appeals affirmed. *Id.* at *9. Baxter has not asserted this ineffective-assistance claim in the instant Petition.

must consider all of the evidence admitted by the trial court.")); *Morningstar v. Haney*, 625 F. Supp. 2d 434, 438 n.3 (E.D. Ky. 2008) (letter that was "not admitted . . . [could] play[] no part in determining whether there was sufficient evidence to support [the petitioner's] conviction").

Based on the facts adduced, the appellate court's conclusion that a rational juror could find beyond a reasonable doubt that the assault resulted in bodily injury that caused "extreme physical pain" is patently reasonable. The Tennessee Court of Criminal Appeals' rejection of Baxter's evidence-sufficiency challenge was thus not the result of an unreasonable application of *Jackson*'s standards to the facts.

To the extent the inmate challenges the sufficiency of the evidence on the ground that the Tennessee Court of Criminal Appeals did not properly interpret *Farmer*, he raises a dispute about state law that is not cognizable on federal habeas review. Under *Jackson*, the sufficiency standard "must be applied with explicit reference to the substantive elements of the criminal offense *as defined by state law*." *Jackson*, 443 U.S. at 324 n.16 (emphasis added).

The Sixth Circuit's decision in *Powell v. Berghuis*, 560 F. App'x. 442 (6th Cir. 2013), is instructive. In that case, the petitioner was convicted of home invasion under Michigan state law for having entered a "temporarily condemned" home. *Powell,* 560 F. App'x at 445. On direct appeal, he argued that the evidence was insufficient for conviction "because the house had been condemned and there was nobody living there at the time of his entry." *Id.* at 449. The Michigan Court of Appeals rejected the argument. "Relying on . . . prior" state case law and "the statutory definition of dwelling," the appellate court held that "the intent of the inhabitant to use a structure as a place of abode is the primary factor in determining whether it constitutes a dwelling." *Id.*

(quoting *People v. Powell*, 750 N.W.2d 607, 609 (Mich. Ct. App. 2008)). The court concluded that, since the homeowner testified that it was his intent to return to the home once the necessary repairs were made, a rational juror could find that the structure the petitioner entered was a "dwelling." *Id.* On federal habeas review, the Sixth Circuit held that the state court's decision was not based on an unreasonable application of the *Jackson* standard. *Id.* The court further rejected the petitioner's "argument that [it] must wade into the morass of state law to determine whether the Michigan courts' definition of 'dwelling' accurately reflected Michigan law at the time of [his] offense." *Id.* The court, finding that "[t]his argument inappropriately invite[d the court] to superintend the Michigan courts in determining what is essential to establish the element of a 'dwelling' under state law," determined that the argument was thus a "state law claim disguised as a *Jackson* claim," which "is not cognizable on federal habeas review." *Id.*

Petitioner here asks this Court to superintend the Tennessee Court of Criminal Appeals in deciding what is essential to establish the "extreme physical pain" variant of "serious bodily injury" under the Tennessee criminal code. To the extent, therefore, that Claims 1 and 3 rest on a state law argument, they are non-cognizable claims disguised as *Jackson* claims. Claims 1 and 3 are DENIED.

## III.    Fundamental Unfairness:  Claim 2

In Claim 2, Baxter again argues that the Tennessee Court of Criminal Appeals erred in allowing Upright's testimony alone to establish that the assault caused "serious bodily injury." He insists that, in applying Tennessee Code Annotated § 39-11-106(a)(34)(C), the appellate court ignored *Farmer*'s "well-established principle of law" that "a victim[']s testimony must be

supported by medical evidence other than the alleged victim['s] testimony alone." (D.E. 1 at PageID 6.) Unlike Claims 1 and 3, Baxter maintains in Claim 2 that the appellate court's alleged misapplication of *Farmer* resulted in "an absence of fundamental procedural fairness." (*Id.*)

Although a federal habeas court will not normally reexamine state court determinations of state law issues, a state law error "rise[s] to the level of [a] federal constitutional claim[]" if it "render[ed] the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)); *see also Shelton v. Seabold*, No. 98-5618, 1999 WL 1021750, at *2 (6th Cir. Nov. 2, 1999) ("a violation of state law [or] a state court's decision applying purely state law may [not] be reviewed by a federal habeas corpus court" "unless the failure amounted to a fundamental miscarriage of justice").

Here, the Tennessee Court of Criminal Appeals' interpretation of state law did not render Baxter's trial fundamentally unfair. Contrary to his assertion, the appellate court did not refuse to abide by an applicable mandate from *Farmer*. The Tennessee Supreme Court in that case did not state that medical records are required for proof of "extreme physical pain." Rather, it addressed the frequent need for medical records to prove the "substantial risk of death" variant of "serious bodily injury," observing that "[b]ecause in many cases a layperson does not have the necessary medical knowledge to determine whether a particular injury involves a substantial risk of death, expert medical testimony is frequently of critical importance in establishing that fact." *Farmer*, 380 S.W.3d at 102. In Baxter's case, however, the state proceeded on a theory of "extreme physical pain," not substantial risk of death. Accordingly, there is no merit to Petitioner's

argument that the appellate court's failure to demand medical proof of "extreme physical pain" rendered his proceeding fundamentally unfair.  Claim 2 is DENIED.

IV.     Denial of Counsel:  Claim 4

Baxter alleges that he was "deni[ed] . . . counsel at [his] preliminary hearing" and was "deni[ed] . . . an indigency hearing" in violation of his rights under the Sixth Amendment.  (D.E. 1 at PageID 7.)  *See United States v. Cronic*, 466 U.S. 648, 659 (1984) ("a trial is unfair if the accused is denied counsel at a critical stage of his trial").  Respondent posits that the claim is procedurally defaulted.  In reply, the inmate submits that he exhausted the claim through his petition for writ of error coram nobis, post-conviction petition, and motion to reopen his post-conviction proceeding.  The Court agrees with Washburn.

In spite of his multiple state court filings, Petitioner never properly presented the claim to the Tennessee Court of Criminal Appeals.  He first raised the issue in his coram nobis petition, but the lower court denied the request on the ground that the question presented was "not cognizable" in such a proceeding.  (D.E. 13-16 at PageID 624-25.)  The Tennessee Court of Criminal Appeals affirmed.  *Baxter*, 2013 WL 597787, at *2.  The claim was therefore not properly presented to the state courts—and therefore not exhausted—via the coram nobis procedure.  *See, e.g., Ralph v. Leibach*, No. 16-6529, 2017 WL 4677546, at *3 (6th Cir. Apr. 12, 2017) (denying a COA and holding that petitioner procedurally defaulted his claim where the state appellate court had "determined that [the] claim was not cognizable" through the procedure selected, and "needed to be raised" through a different procedure, which petitioner did not use); *Cutshaw v. Lewis*, No.

2:04-CV-279, 2007 WL 2955589, at *2, 21 (E.D. Tenn. Oct. 9, 2007) (petitioner failed to exhaust claim that was improperly raised through a petition for writ of error coram nobis).

Baxter subsequently raised the issue in his post-conviction petition, but the court denied the claim because no evidence was proffered to support it. He did not present the claim on appeal from the denial of post-conviction relief.

He then raised the claim in a motion to reopen the post-conviction proceedings, which was denied by the lower court without reaching the merits. *See Baxter*, No. W2015-00474-CCA-R3-PC. Petitioner filed an appeal, which the Tennessee Court of Criminal Appeals dismissed based upon his "failure . . . to comply with statutory requirements governing review of a denial of a motion to reopen." *See id.* As the time for properly raising the issue to the state appellate court has passed, *see* Tenn. Code Ann. § 40-30-106(g), the claim is procedurally defaulted.

The inmate argues that post-conviction counsel's failure to raise the claim in his post-conviction appeal provides cause to excuse the default. (*See* D.E. 18 at PageID 680 ("Post conviction counsel failed to brief the issue which caused the appellate tribunal not to review.").) The argument fails for two reasons.

First, to the narrow extent that the ineffective assistance of post-conviction counsel may be cause to excuse a procedural default pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), the ineffectiveness must be attributable to post-conviction trial counsel, not post-conviction appellate counsel. *See Myers v. Osborne*, No. 17-5284, 2018 WL 4215638, at *3 (6th Cir. Apr. 12, 2018) ("*Martinez* does not apply" where claims were presented "at the post-conviction initial-review proceeding" but not "preserve[d] . . . on appeal," quoting *West v. Carpenter*, 790 F.3d 693, 698

(6th Cir. 2015)).  Second, "because Tennessee does not effectively require defendants to raise claims pertaining to total deprivation of counsel at pre-trial proceedings for the first time in post[-]conviction review, [a petitioner] cannot use *Martinez* to overcome his procedural default" of a *Cronic* claim.  *Carruthers v. Mays*, 889 F.3d 273, 289 (6th Cir. 2018), *petition for cert. docketed* (No. 18-697) (U.S. Nov. 27, 2018).  The procedural default is therefore unexcused and Claim 4 is DISMISSED.

For the reasons set forth herein, the Petition is DENIED.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a COA.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2)-(3).  A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"  *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (quoting *Slack*, 529 U.S. at 484).  In this case, reasonable jurists would not debate the correctness of the Court's decision to

deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that, if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

Here, for the same reasons it denies a COA, the Court CERTIFIES, in accordance with Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.[8]

IT IS SO ORDERED this 10th day of December 2018.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[8]If Petitioner files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.